# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GILBERTO CALDERON, | 1:08-cv-01015 GSA |
| Plaintiff, | ORDER REGARDING PLAINTIFF'S PETITION FOR ATTORNEY FEES AND EXPENSES PURSUANT TO THE EQUAL ACCESS TO JUSTICE ACT |
| v. | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | (DOCUMENT 27) |
| Defendant. | |

**BACKGROUND**

This matter is before the Court on a petition for prevailing party fees and costs under the Equal Access to Justice Act ("EAJA"), Title 28 of the United States Code section 2412(d), filed by Plaintiff on March 19, 2010.

**FACTS AND PRIOR PROCEEDINGS**

On January 15, 2008, Administrative Law Judge ("ALJ") Edward D. Steinman issued his disability determination which, in pertinent part, found that Gilberto Calderon ("Plaintiff") was literate based on the requirements of Title 20 of the Code of Federal Regulation section 404.1564, and that the Plaintiff was not credible. (AR 18-20.) On July 6, 2008, Plaintiff requested review of ALJ Steinman's decision, and subsequently, the Commissioner

("Defendant") defended both those findings as proper. (Docs. 1 & 19 at 10-16.) More specifically, the Defendant argued three distinct grounds supported the ALJ's literacy finding: 1) the ALJ was not required to rely on the Grids in light of testimony from the vocational expert ("VE"); 2) even if the ALJ was required to apply on the Grids, the Grid identified by Plaintiff was inapplicable; and 3) the ALJ did make a sufficient finding that Plaintiff was literate. (Doc. 19 at 10-13.)

On November 10, 2009, this Court issued its Order Regarding Plaintiff's Social Security Complaint wherein the agency's decision was reversed and the matter remanded for further proceedings. (Doc. 21.) The basis for this Court's remand order was twofold: 1) the failure of the ALJ to properly assess and/or substantiate the Plaintiff's literacy and ability to communicate in English, pursuant to Title 20 of the Code of Federal Regulations sections 404.1564(b) and 416.964(b), and 2) as a result of this failure, the hypotheticals proposed by the ALJ to the VE were incomplete as they failed to fully incorporate all of Plaintiff's limitations. (Doc. 21 at 12-15.) However, as to the ALJ's credibility determination, the Court did find that the ALJ's actions and conclusions were supported by substantial evidence, and therefore, were appropriate. (Doc. 21 at 15-18.)

In response to this Court's Order, on November 13, 2009, the Commissioner moved to amend the judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure. (Doc. 23.) Specifically, Defendant requested this Court amend its decision as it pertained to the ALJ's literacy determination, based on the argument that this Court's finding the application of the Grids unnecessary in determining Plaintiff's literacy precluded remand as moot. *Id*. at 2-3. On November 25, 2009, Plaintiff filed a motion in opposition. (Doc. 24.) And on December 5, 2009, Defendant filed a reply brief in response to Plaintiff's motion in opposition. (Doc. 25.)

Defendant's Rule 59(e) motion was denied January 21, 2010. (Doc. 26.) This Court held that use of the Girds cannot form the sole source upon which the ALJ relies in making a disability determination in the face of non-exertional limitations; however, neither are they are simply precluded by the presence of a non-exertional limitation. (Doc. 26 at 4-6.)

1    On March 19, 2010, Plaintiff filed a Petition for Attorney Fees and Expenses pursuant to
2 the EAJA.  (Doc. 27.)  Plaintiff's claim for attorney's fees totals $6,986.61.  (Doc. 27 at 3, 14,
3 Exh. 2.)  This total represents $6,511.16 in attorney fees for 37.8 hours at a rate of $172.85 per
4 hour; it also identifies $475.45 in paralegal fees for 4.3 hours at a rate of $110.57 per hour.  (Doc.
5 27 at 2-3, 14, Exh. 2.)  Plaintiff argues that the Commissioner was not substantially justified in
6 his defense of the ALJ's literacy decision, and that the award of fees should be paid to Plaintiff's
7 counsel directly, or in the alternative, to Plaintiff as a representative payee, so as to avoid a
8 potential offset for federally recoverable debts.  (Doc. 27 at 4-14.)

9    The Commissioner filed an opposition to the Plaintiff's petition on April 5, 2010, arguing
10 that Plaintiff was not entitled to fees because: 1) the Commissioner's defense of the ALJ's
11 findings was substantially justified, pointing out that it had prevailed on the credibility issue; 2)
12 the amount of fees claimed by Plaintiff was unreasonable, specifically citing the sparsity of the
13 medical record evidence, excessive attorney time, and billings for clerical/administrative tasks;
14 and 3) EAJA fees are only payable to the Plaintiff, as he is the prevailing party, not the Plaintiff's
15 attorney.  (Doc. 28 at 2-10.)

16    Thereafter, on May 5, 2010, Plaintiff filed a reply to the Commissioner's opposition
17 which sought additional "fees on fees" in the amount of $1,171.23 for the 6.8 attorney hours it
18 took to compose the reply brief, and thereby raising the total request for fees to $8,157.23.  (Doc.
19 29 at 12.)  Plaintiff argued that the Commissioner's defense of the ALJ's decision regarding
20 Plaintiff's literacy was not substantially justified, indicating that this Court's determination made
21 clear that the evidentiary justification relied on by the ALJ was "extremely limited" and "far from
22 clear," and that the ALJ improperly conflated the ability to communicate as demonstrative of
23 Plaintiff's literacy.  (Doc. 29 at 3-4.)

24    On June 17, 2010, this Court requested the parties file supplemental briefs addressing the
25 applicability of the *Astrue v. Ratliff*, 130 S.Ct. 2521 (2010).  (Doc. 30.)  In response, both parties
26 filed responsive briefs specifically addressing *Astrue v. Ratliff*.  (Docs. 31 & 32.)
27 ///
28 ///

**DISCUSSION**

Pursuant to the EAJA, a prevailing party will be awarded reasonable attorney fees, unless the government demonstrates that its position in the litigation was "substantially justified," or that "special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A). The burden of establishing substantial justification is on the government. *Gutierrez v. Barnhart*, 274 F.3d 1255, 1258 (9th Cir. 2001). A position is "substantially justified" if it has a reasonable basis in law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565-566; *United States v. Marolf*, 277 F.3d 1156, 1160 (9th Cir. 2002). Substantially justified has been interpreted to mean "'justified in substance or in the main'- that is justified to a degree that could satisfy a reasonable person" and "more than merely undeserving of sanctions for frivolousness." *Underwood*, 487 U.S. at 565-566; *see also Marolf*, 277 F.3d at 161. Having established the height of the substantial justification-bar, the analysis must now turn to whether the Commissioner's decision to defend was sufficient to clear it.

### *A. Substantial Justification*

To determine whether the Defendant was substantially justified, the inquiry looks to the underlying governmental action being defended in the litigation and the positions taken by the government in the litigation itself. *Barry v. Bowen*, 825 F.2d 1324, 1331 (9th Cir. 1987), disapproved of on other grounds, *In re Slimick*, 928 F.2d 304 (9th Cir. 1990). *See also Sampson v. Charter*, 103 F.3d 918, 921-922 (9th Cir. 1996) (the nature and scope of the ALJ's legal errors are material in determining whether the Commissioner's decision to defend them was substantially justified); *Corbin v. Apfel*, 149 F.3d 1067, 1053 (9th Cir. 1998) ("basic and fundamental" errors are difficult to justify).

With respect to procedural errors that eventually led to remand, the absence of substantial justification has taken many forms within this Circuit[1]. In *Sampson*, the ALJ's failure to make

---

[1] See *Flores v. Shalala*, 49 F.3d 562, 570, 572 (9th Cir. 1995) (finding no substantial justification where ALJ ignored medical report, both in posing questions to the VE and in his final decision, which contradicted the job requirements that the ALJ deemed claimant capable of performing); *Crowe v. Astrue*, 2009 WL 3157438, *1 (E.D. Cal. September 28, 2009) (finding no substantial justification in law or fact based on ALJ's improper rejection of treating physician opinions without providing the basis in the record for so doing); *Aguiniga v. Astrue*, 2009 WL 3824077, *3 (E.D. Cal. November 13, 2009) (finding no substantial justification in ALJ's repeated

4

necessary inquiries of the unrepresented claimant and his mother in determining the onset date of disability, as well as his disregard of substantial evidence establishing the same, led the *Sampson* court to find the ALJ's actions, and the Commissioner's defense, not substantially justified. *Sampson*, 103 F.3d at 921-922.

Likewise, in *Corbin*, the government defended the ALJ's failure to determine whether the claimant's testimony regarding the impact of excess pain she suffered as a result of her medical problems was credible, and whether one of her doctors' lifting restrictions was temporary or permanent. *Corbin*, 149 F.3d at 1053. The Commissioner's defense and ALJ determination, the *Corbin* court asserted, were not substantially justified. *Id*.

In *Younan v. Barnhart*, 139 Fed.Appx. 782 (9th Cir. 2005), the government defended an ALJ determination, based on an incomplete development of the evidentiary record concerning whether or not claimant was entitled to receive Title II benefits to offset part of the claimed overpayment of Title XVI benefits. *Younan*, 139 Fed.Appx. at 783. As in *Sampson*, the failure to develop the record in *Younan* was found to be not substantially justified. *Id*.

In contrast, substantial justification was found in *Lewis v. Barnhart*, 281 F.3d 1081, 1084-1086 (9th Cir. 2002). In *Lewis*, the defense of an ALJ's erroneous characterization of claimant's testimony was substantially justified because the decision was supported by a reasonable basis in law, in that the ALJ must assess the claimant's testimony and may use that testimony to define past relevant work as actually performed, as well as a reasonable basis in fact, since the record contained testimony from the claimant and a treating physician that cast doubt on the claimant's subjective testimony. *Id*.

Substantial justification was also found in *Le v. Astrue*, 529 F.3d 1200 (9th. Cir 2008). In *Le*, the Plaintiff sought EAJA fees after successfully acquiring reversal and remand of an ALJ decision in district court. *Le*, 529 F.3d at 1201. The request for fees stemmed from the Commissioner's argument that a Dr. Miller was not a treating doctor because the medical record

---

mischaracterization of the medical evidence, improper reliance on the opinion of a non-examining State Agency physician that contradicted the clear weight of the medical record, and improperly discrediting claimant's subjective complaints as inconsistent with the medical record).

evidence documented only five visits to him over three years. *Id*. The court held that, although incorrect

> the commissioner's position was substantially justified within the meaning of the fee statute. A nonfrivolous argument could be made that Le's five visits over three years were not enough under the regulatory standard especially given the severity and complexity of Le's alleged mental problems. . . . Given the vagueness and fact-specific nature of the regulatory standard, the Commissioner's position was reasonable even though incorrect."

*Le*, 529 F.3d at 1201-1202.

Here, the Plaintiff complained of two alleged errors committed by the ALJ: a failure to fully develop the record that Plaintiff was illiterate, and a failure to articulate clear and convincing reasons for discrediting the testimony of Plaintiff. (Doc. 13 at 9-21.) Subsequently, this Court found the ALJ's credibility determination to be supported by substantial evidence and free from legal error, yet remanded the matter as the result of the ALJ's failure to fully develop the record concerning Plaintiff's literacy. (Doc. 28 at 2-10.) However, even after this Court's ruling identified the lack of evidentiary support behind the ALJ's literacy determination, the Defendant continued to defend the ALJ's decision arguing that it was improper to evaluate the ALJ's literacy determination under the Grid framework after determining the use of the Grids was prohibited by the presence of non-exertional limitations. (Doc. 23 at 2-3.) This Court disagreed. (Doc. 26.)

Neither the underlying governmental action being defended in the litigation, nor the positions taken by the government in the litigation itself are substantially justified. As the record reflects, the error of the ALJ was the failure to develop the record despite having an obligation to do so pursuant to the governing regulations. (Doc. 28 at 2-10; *see also Sampson*, 103 F.3d at 921-922; *Younan*, 139 Fed.Appx. at 783; 20 C.F.R. §§ 404.1564, 416.964.) "The failure of ALJs to make [specific] findings in disability cases is among the principle causes of delay and uncertainty in this area of law." *Corbin*, 149 F.3d at 1053; *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983.). The Court finds Defendant's citation to *Le v. Astrue*, 529 F.3d 1200 to be unpersuasive. *Le* is distinguishable from the present case because in *Le* the record was ambiguous, such that it permitted a reasonable argument to be made that the doctor was not a

treating physician. *Le*, 529 F.3d at 1201-1202.   In contrast, this case involves a record that was incapable of supporting an informed determination regarding literacy as it was devoid of evidence.  (Doc. 28 at 2-10.)   As such, this case is more akin to *Sampson* and *Younan*, where the ALJ's failure to sufficiently develop the record led to remand and eventually an award of fees. Thus, although this Court is not mandated to automatically find the government's defense of an ALJ's procedural error not substantially justified, the defense of such a basic and fundamental error, such as the one present here, is difficult to justify.

In such circumstances, an award of fees properly apportioned to pursuing the stages of the case in which the government lacked substantial justification are appropriate.  *Corbin*, 149 F.3d 1053; *Flores*, 49 F.3d at 566-71.  In this instance, this would include: the original appeal of the ALJ's decision, the reply in response to the government's opposition thereto, the opposition to the government's motion to amend the judgment, the instant motion requesting fees, as well as the reply to the government's opposition.

### B.   *Reasonableness of Entries Billed*

Plaintiff's counsel Young Cho seeks attorney's fees in the sum of $8,157.23, which represents 44.6 in attorney hours and 4.3 in paralegal hours.  (Doc. 27 at 3, 14, Exh. 2; Doc. 29 at 12, Cho Decl.)  More particularly, separating the attorney hours by the year in which they were completed results in .8 hours in 2008, 35.1 hours in 2009, and 8.7 hours in 2010.  (Doc. 27 at Exh. 2; Doc. 29 at Cho. Decl.)  Similarly, the paralegal hours can also be distinguished by the year completed, resulting in a hourly breakdown of 3.4 hours in 2008, .3 hours in 2009, and .6 hours in 2010.  (Doc. 27 at Exh. 2.)  Defendant contends that excessive attorney and paralegal time was expended reviewing the medical evidence, researching, composing the briefs, and performing clerical or administrative tasks.  (Doc. 28 at 6-9.)

An award of attorney fees must be reasonable.  *Sorenson v. Mink*, 239 F.3d 1140, 1145 (9th Cir. 2001).  "[E]xcessive, redundant, or otherwise unnecessary" hours should be excluded from a fee award, and charges that are not properly billable to a client are not properly billable to the government.  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).  As discussed above, in this case an award of fees should be properly apportioned to pursuing the stages of the case in which

the government lacked substantial justification are appropriate. *Corbin*, 149 F.3d 1053; *Flores*, 49 F.3d at 566-71.

With the exception of those entries pertaining to settlement (i.e. the entries of January 2 & 5, and February 10, 2009 totaling 3.3 hours), this Court finds that the tasks incorporated into the itemized attorney hours are reasonable. The settlement entries were removed because they do not appear to be related to the burden imposed on Plaintiff as a result of having to go forward due to an erroneous ALJ decision and the Defendant's defense of the same. As such, the Plaintiff's 2009 attorney time will be reduced by 3.3 hours, leaving 31.8 hours total in 2009 attorney time.

As to Defendant's claims that the Plaintiff's fee request improperly includes administrative and clerical tasks, this Court agrees in part. The itemization of the paralegal time indicates a .2 time entry for preparation and filing a proof of service and .4 time entry for preparation of a magistrate consent form. (Doc. 27 at Exh. 2.) Given these forms are simple, check-the-box type forms that require little time and effort to complete and file, they will be reduced to a .1 time entry for each. As such, the 2008 paralegal hours Plaintiff requested will be reduced by .3 in total, leaving 3.1 hours total in 2008 paralegal time.

Thus, the yearly breakdown of compensable attorney hours, after adjustment, results in .8 hours in 2008, 31.8 hours in 2009, and 8.7 hours in 2010. Likewise, the breakdown of paralegal hours, after adjustment, results in 3.1 hours in 2008, .3 hours in 2009, and .6 hours in 2010.

### C. *Reasonableness of Hourly Rates Billed*

Having established the entries subject to an EAJA claim, the hourly rate of these entries must now be determined. As noted by Plaintiff, payment of fees pursuant to EAJA has been authorized up to an hourly rate of $125.00 except where an increase is warranted by the cost of living or existence of "special factors." 28 U.S.C. § 2412(d)(2)(A)(ii). Plaintiff has requested a cost of living adjustment to $172.85 for 2008, and $172.24 for 2009 and 2010. (Doc 27 at 6-7; Doc. 29 at 12.) This request extends to the maximum permitted by statute[2].

---

[2] The statutory maximum EAJA hourly rate, in this Circuit, in 2008 was $172.85; in 2009, the hourly rate was $172.24; and in 2010, the hourly rate for the first half of the year was $174.64. *See* http://www.ca9.uscourts.gov/content/view.php?pk_id=0000000039.

This Court finds the Plaintiff's request for a cost of living adjustment to be reasonable in light of the location and expertise of Plaintiff's counsel, as well as the lack of argument suggesting otherwise by Defendant. Thus, the attorney time will be compensated at $172.85 for hours expended in 2008, and $172.24 for hours expended in 2009 and 2010.

As to the hourly rate for paralegal time, this Court agrees with Plaintiff's assessment that $110.57 is a median paralegal rate in California. As such, the paralegal time will be compensated at $110.57 for all compensable hours.

In sum, Plaintiff is entitled to a total EAJA fee award of $7,556.28. This represents .8 attorney hours in 2008 at $172.85 per hour, and 40.5 hours in 2009 and 2010 at $172.24 per hour, as well as 4 paralegal hours at $110.57.

### D.     Proper Payee

The parties were asked to brief the applicability of the recent Supreme Court decision in *Astrue v. Ratliff*, 130 S.Ct 2521 (2010) to this matter. In pertinent part, Plaintiff argues that the holding in *Ratliff* is not applicable to the present case because: 1) Plaintiff has assigned his rights to the EAJA fee award to his counsel pursuant to the fee agreement between them; and 2) that pursuant to the 2005 amendment of the Finance Management Service regulations, EAJA fee awards are exempted from administrative offset against any outstanding federal debts. (Doc. 31 at 2-3.) In contrast, Defendant argues that *Ratliff* is applicable, and as a result: 1) the fee, if any, must be offset by any applicable outstanding federal debts; and 2) the fee, if any, is payable to the Plaintiff as the prevailing party, and not the Plaintiff's attorney. (Doc. 32 at 1-3.)

In *Ratliff*, the Supreme Court held that fee awards made pursuant to Title 28 of the United States Code section 2412(d)(1)(A) are payable to the litigant and are therefore subject to an offset to satisfy the litigant's pre-existing debt to the federal government. *Ratliff*, 130 S.Ct at 2522. In *Ratliff*, the plaintiff's counsel was successful in plaintiff's Social Security benefits suit against the United States. *Id*. The District Court in that case granted plaintiff's unopposed motion for fees under EAJA. *Id*. However, before paying the fee award, the Government discovered that plaintiff owed the United States a debt that predated the award, and accordingly, the Government sought an offset of that owed amount. *Id*. Plaintiff's counsel intervened and argued that the fees

9

award belonged to plaintiff's counsel, and thus was not subject to offset for the litigant's federal debts. *Id*. The Supreme Court disagreed, finding that "Congress knows how to make fee awards payable directly to attorneys where it desires to do so," and because the fee was payable to a "prevailing party," Congress intended the fee to go to the litigant, and not the attorney. *Ratliff*, 130 S.Ct at 2527-2529.

At first glance, it appears clear that *Ratliff* is applicable to the present case, and would thus warrant a finding in accordance with that decision. However, Plaintiff has raised the novel argument regarding the impact of the 2005 amendment of the Finance Management Service regulations. (Doc. 29 at 11-13.) Title 31 of the Code of Federal Regulations section 285.5(e)(5) concerns payments made by the United States to representative payees. It states:

> If a payment is made to a person solely in that person's capacity as a representative payee for another person having the beneficial interest in a payment, the disbursing official shall offset that payment only to collect debts owed by the person having the beneficial interest in the payment. Payment agencies are responsible for identifying representative payees.

31 C.F.R. § 285.5(e)(5). Plaintiff apparently contends that he has acquired representative payee status simply by way of an outstanding obligation to pay for legal services; however, this Court does not agree. First, the last sentence of the regulation clearly states that "Payment agencies" will identify representative payees, and Plaintiff has not shown any such identification has been made by any such agency. 31 C.F.R. § 285.5(e)(5). Second, the regulation defines "representative payee" as "a person named as payee on the payment voucher certified by the payment agency *who is acting on behalf of a person entitled to receive the benefit* of all or part of the payment." 31 C.F.R. § 285.5(b) (emphasis added). Fatal to Plaintiff's interpretation of Title 31 of the Code of Federal Regulations section 285.5(e)(5) is that Plaintiff is not acting on behalf of a person entitled to receive the fee payment. *Ratliff* clearly held that Plaintiff's counsel is not entitled, pursuant to the governing regulations, to receive the benefit of the attorneys' fee payment, but rather it is the Plaintiff who is the person entitled to receive said benefit. *Ratliff*, 130 S.Ct at 2522. Accordingly, Plaintiff's counsel cannot be a "person entitled to receive the benefit" because he does not possess a beneficial interest in the payment, and as such Title 31 of the Code of Federal Regulations section 285.5(e)(5) does not bar the Defendant from offsetting

the fee payment to collect Plaintiff's own debts, if any. 31 C.F.R. § 285.5(e)(5). Finally, even if Plaintiff were a representative payee, he could not avoid offset by simply obtaining that status. This result is foreclosed by the language in the statute which states "the disbursing official shall offset that payment only to collect the debts owed by *the person having the beneficial interest* in the payment." 31 C.F.R. § 285.5(e)(5) (emphasis added). As established by *Ratliff*, it is the prevailing party or litigant, not Plaintiff's counsel, that is entitled to receive the beneficial interest in EAJA fees. *Ratliff*, 130 S.Ct at 2522. Thus, even if Plaintiff was a representative payee, because Plaintiff is the holder of the beneficial interest in the EAJA fee award, the award would still be subject to offset.

Therefore, this Court finds *Ratliff* to be controlling over the payee issue in this case, and as such, Plaintiff, as the prevailing litigant, would normally be awarded the fees described above, subject to any offset for applicable government debts. Defendant, however, seems to be content to permit payment to Plaintiff's counsel if Plaintiff does not have any qualifying government debt pursuant to government's discretionary waiver of the requirements of the Anti-Assignment Act. (Doc. 32 at 3.) This Court finds the government's position to be reasonable and will therefore permit payment to Plaintiff's counsel provided Plaintiff has no government debt that requires offset.

## AWARD

Mr. Calderon's motion is therefore GRANTED. He is personally awarded fees in the total amount of $7,556.28, subject to offset for any qualifying government debt. In the event that there is no qualifying government debt, then pursuant to the government's stipulation the award of fees may be made payable to the Law Offices of Lawrence D. Rohlfing.

IT IS SO ORDERED.

Dated: October 21, 2010          /s/ Gary S. Austin
                                 UNITED STATES MAGISTRATE JUDGE